IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JANE C. KELLEY and RICHARD HILL,

                      OPINION AND ORDER

               Plaintiffs-Appellees,

                        15-cv-377-bbc

    v.

ROY E. AHERN,

               Defendant-Appellant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

     In this bankruptcy appeal from an adversary proceeding, Roy Ahern challenges the bankruptcy court's determination that he cannot discharge a state court judgment for "fraudulently obtaining title to property," in violation of Wis. Stat. § 943.20(1)(d). Although Ahern acknowledges that 11 U.S.C. § 523(a)(2)(A) prohibits a debtor from obtaining a discharge for a debt incurred because of the debtor's fraudulent conduct, he argues that the bankruptcy court erred in giving preclusive effect to the state court's default judgment against him for fraud in the sale of a floating dock system.

     Ahern's briefs are not easy to follow, but the primary question he raises on appeal relates to the circumstances under which a default judgment may serve as the basis for applying issue preclusion. Although Wisconsin courts have provided only limited guidance on that question, I agree with the bankruptcy court that issue preclusion should apply in the circumstances of this case. In particular, Ahern knew about the state court lawsuit and

1

participated in the proceedings for almost three years, but he chose not to attend the trial without a legitimate excuse. When a party has a full and fair opportunity to litigate an issue to completion, but makes a tactical decision to avoid a trial, he should not be allowed to avoid the consequences of his decision.

OPINION

Under 11 U.S.C. § 523(a)(2)(A), a debtor may not discharge "any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." In this case, the bankruptcy court applied § 523(a)(2)(A) to a 2014 judgment from the Circuit Court for Door County, Wisconsin, for violating Wis. Stat. § 943.20(1)(d), which prohibits a party from "[o]btain[ing] title to property of another person by intentionally deceiving the person with a false representation which is known to be false, made with intent to defraud, and which does defraud the person to whom it is made."

Although Ahern says that exceptions to discharge such as § 523(a)(2)(A) must be construed narrowly, e.g., In re Chambers, 348 F.3d 650, 654 (7th Cir. 2003), he does not explain how that canon of construction applies to this case. He does not deny that a judgment under § 943.20(1)(d) is nondischargeable under § 523(a)(2)(A), so it makes no difference whether § 523(a)(2)(A) is construed broadly or narrowly. Grogan v. Garner, 498 U.S. 279, 290 (1991) (§ 523(a)(2)(A) applies to "all fraud claims creditors have successfully

reduced to judgment"). Rather, the question on appeal is whether the bankruptcy court should have given preclusive effect to the state court judgment rather than making its own findings of fact on whether Ahern made a false representation to Jane Kelley and Richard Hill.

The parties agree that Wisconsin law governs this question, 28 U.S.C. § 1738; Stephan v. Rocky Mountain Chocolate Factory, 136 F.3d 1134, 1136 (7th Cir. 1998) , and they agree on the general standard for applying issue preclusion (also called "collateral estoppel") under Wisconsin law. Generally, the first questions are whether the issue was "actually litigated and determined by a valid and final judgment" and whether "the determination is essential to the judgment." First Weber Group, Inc. v. Horsfall, 738 F.3d 767, 772-73 (7th Cir. 2013) (quoting Hlavinka v. Blunt, Ellis & Loewi, Inc., 174 Wis. 2d 381, 497 N.W.2d 756, 762 (Ct. App. 1993)). The other question is whether it is "fundamentally fair" to apply issue preclusion. Id. Several factors may inform that determination, including (1) whether the party could have obtained review of the judgment; (2) whether there have been changes in the law since the first action; (3) whether the claims in the two cases are "distinct"; (4) whether there were significant differences in the quality or extensiveness of the proceedings; (5) whether the burdens of proof are different in the two cases; and (6) whether the party had an adequate opportunity and incentive to obtain a full and fair adjudication in the initial action. Michelle T. by Sumpter v. Crozier, 173 Wis. 2d 681, 689, 495 N.W.2d 327, 330-31 (1993).

Applying this test is more complicated in this case because of the circumstances under

which Kelley and Hill obtained their judgment. Initially, Ahern denied Kelley's and Hill's allegation that Ahern induced them to purchase a floating dock system by intentionally deceiving them about the quality and compatibility of the parts. Although Ahern litigated the case for almost three years, he did not appear at the trial. After taking evidence from Kelley and Hill, the state court entered a default judgment in their favor in the amount of nearly $210,000. Dkt. #13, exh. F.

Neither the parties nor the bankruptcy court cites a case from the Wisconsin Supreme Court addressing the extent to which a default judgment is entitled to preclusive effect. Under those circumstances, federal courts look to the rulings of the intermediate appellate court for guidance. Pisciotta v. Old National Bancorp, 499 F.3d 629, 635 (7th Cir. 2007).

Heggy v. Grutzner, 156 Wis. 2d 186, 456 N.W.2d 845 (Ct. App. 1990), appears to be the only case in which a Wisconsin appellate court considered in depth whether and to what extent issue preclusion could apply to a default judgment. In Heggy, 156 Wis. 2d at 193-94, 456 N.W.2d at 848-49, the court acknowledged the general rule from Restatement (Second) of Judgments § 27 comment e, at 257 (1980), that issue preclusion does not apply to default judgments because the issues underlying such judgments are not "actually litigated." However, the court also cited a caveat in the Restatement: "[E]ven if [an issue] was not litigated, the party's reasons for not litigating in the prior action may be such that preclusion would be appropriate." Id. See also Deminsky v. Arlington Plastics Machines, 2001 WI App 287, ¶ 40, 249 Wis. 2d 441, 472-73, 638 N.W.2d 331, 346-47 ("'[P]olicy concern[s]' underlying the 'default judgment exception to the issue preclusion rule' might

4

not always be present, and thus, there may be circumstances in which a party could or should be precluded from litigating an issue, notwithstanding the fact that the issue had been previously determined by default.").

In Heggy, 156 Wis. 2d at 193-94, 456 N.W.2d at 848-49, the court concluded that it would be appropriate to apply issue preclusion in that case because "[n]o policy concern favoring the default judgment exception to the issue preclusion rule" applied. Id. In particular, the court noted that the party had actual notice of the previous action, but he tried to evade service rather than participate. Id.

Under the approach of the Wisconsin Court of Appeals, the question whether a default judgment may be entitled to preclusive effect seems to overlap the question whether applying issue preclusion comports with "fundamental fairness." For example, in Heggy, 156 Wis. 2d at 193-94, 456 N.W.2d at 848-49, the court suggested that it would hesitate to apply issue preclusion to a default judgment if the party chose not to contest a claim because "[t]he action . . . involve[d] so small an amount that litigation of the issue . . . cost more than the value of the lawsuit" or because "the forum [was] an inconvenient one in which to produce the necessary evidence or in which to litigate at all." This reasoning is similar to one of the factors that may underlie a fundamental fairness analysis. Michelle T., 173 Wis. 2d at 689, 495 N.W.2d at 330-31 (courts may consider whether party has "inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action"). It is also consistent with the approach the Court of Appeals for the Seventh Circuit took in In re Catt, 368 F.3d 789, 791-92 (7th Cir. 2004), which focuses on the question

whether the party sought to be precluded had a fair *opportunity* for a hearing.

In this case, it is undisputed that Ahern declined to attend the trial even though he was aware that the state court action was proceeding and that a trial was scheduled. He does not allege that he believed the trial would be canceled or that he was excused from attending the trial because he planned to file a bankruptcy petition in the near future. Accordingly, I see little difference between this case and Heggy. It would create a perverse incentive to allow a party to avoid issue preclusion by knowingly failing to attend his own trial.

Ahern points out that, unlike the party in Heggy, he disputed Kelley's and Hill's allegations throughout the litigation until trial. This is true, but it is not clear how that fact strengthens Ahern's position. If anything, it strengthens the case for applying issue preclusion because Ahern forced Kelley and Hill to expend the time and resources necessary to litigate the case until the very end, defaulting only after the parties had been litigating for almost three years. Declining to apply issue preclusion under those circumstances would only encourage a similar waste of judicial resources in future cases. In re Estate of Rille ex rel. Rille, 2007 WI 36, ¶ 137, 300 Wis. 2d 1, 55, 728 N.W.2d 693, 719 ("[T]he purpose of issue preclusion . . . is to promote judicial efficiency and finality and protect against harassing litigation.").

Ahern says that it is unfair to give the default judgment preclusive effect because he was proceeding pro se at the time of the trial as a result of his inability to continue paying his lawyer. This argument is disingenuous. It is undisputed that Ahern continued participating in the litigation for almost two years after he began proceeding pro se. Ahern's

Br., dkt. #6, at 5; Hill v. Ahern, No. 14-136 (Bankr. W.D. Wis.), dkt. #13, exh. D.  Thus, it is difficult to see Ahern's decision to skip the trial as anything other than a tactical decision.

In any event, as the bankruptcy court noted, the Wisconsin Court of Appeals has rejected the argument that lack of counsel in an earlier case is a sufficient reason to decline to apply issue preclusion in the later case.  Masko v. City of Madison, 2003 WI App 124, ¶ 11, 265 Wis. 2d 442, 451, 665 N.W.2d 391, 396.  That ruling is not surprising.  If acting pro se immunized a litigant from issue preclusion, pro se litigants could raise the same issue over and over again in case after case without consequence.  Despite the bankruptcy court's reliance on Masko, Ahern does not acknowledge the case, much less try to distinguish it.

Ahern cites Klingman v. Levinson, 831 F.2d 1292, 1295 (7th Cir. 1987), for the proposition that a party must be "fully represented" in the previous action for issue preclusion to apply.  As an initial matter, Klingman was not decided under Wisconsin law, so it is not controlling.  In any event, in Klingman the court did not say the party must be represented *by counsel*.  In fact, the Court of Appeals for the Seventh Circuit has stated that "the idea that litigating pro se should insulate a litigant from application of the collateral estoppel doctrine . . . is absurd."  DeGuelle v. Camilli, 724 F.3d 933, 938 (7th Cir. 2013).  The question whether a litigant was "fully represented" arises when the litigant was not a party in the previous action.  In that situation, the question is whether the litigant's *interests* were fully represented by the parties in the previous case.  People Who Care v. Rockford Board of Education, 68 F.3d 172, 179 (7th Cir. 1995).

Ahern makes the related argument that he was not aware of the consequences of defaulting, but he does not cite any evidence to support that allegation, not even his own affidavit. Further, Ahern cites no authority to support the view that a litigant must be aware of the doctrine of issue preclusion before it can apply. The important question under the "fundamental fairness" analysis is whether the party had the incentive and the opportunity to litigate the issue. Again, Ahern does not deny that he knew about the trial and he does not allege that he believed the trial would be canceled because of a not-yet-filed bankruptcy petition. Other than his lack of counsel, Ahern identifies no reason for missing the trial. In addition, he does not deny that he was aware that the trial could result in a substantial damage award. Thus, he had both the opportunity and incentive to litigate the claims to resolution, but declined to do so. Ahern does not argue that any of the other factors from Michelle T. regarding "fundamental fairness" apply in this case, Ahern's Br., dkt. #6, at 15, so I need not consider those.

Finally, Ahern argues that the state court judgment should not be given preclusive effect because the state court record is not sufficiently clear to establish fraudulent conduct. In particular, Ahern says that the state court did not make findings of fact in support of the judgment and that Kelley's and Hill's allegations in their complaint were not sufficient to comply with the particularity requirements of Fed. R. Civ. P. 9. Although Ahern does not clearly explain the basis for these alleged requirements, I understand him to be saying that findings of fact or specific allegations in the complaint are necessary to make issue preclusion fundamentally fair. However, Ahern does not tie these issues to any of the factors

considered by Wisconsin courts in applying issue preclusion. Presumably, he means to argue that, in the context of issue preclusion and default judgments, an additional check is needed to insure that there was adequate support for the issue being litigated, even if the party knowingly failed to challenge the fact in the previous case.

In response to Ahern's argument that findings of fact are required, Kelley and Hill acknowledge that the state court in the previous action did not make such findings. However, they point out that the state court took testimony from witnesses and admitted 33 exhibits before entering judgment, suggesting that the court did not simply take their word for it that Ahern committed fraud. Neither side discusses the content of the testimony or the exhibits, so it is difficult to evaluate what that evidence shows.

Regardless of the evidence considered by the state court, I am not persuaded that findings of fact are a prerequisite to applying issue preclusion to the default judgment in this case. Ahern says that findings are required "so a reviewing court can properly determine what the court found as to issues of liability," Ahern Rep. Br., dkt. #8, at 7, but there is no doubt in this case that the state court found that Ahern made a false representation. The elements of Wis. Stat. § 943.20(1)(d) include "intentionally deceiving the person with a false representation which is known to be false," so a judgment under § 943.20(1)(d) necessarily includes a finding that Ahern made a "false representation" under 11 U.S.C. § 523(a)(2)(A). Heggy, 156 Wis. 2d at 195, 456 N.W.2d at 849 (issue preclusion applies to facts that are "essential to the judgment").

Ahern relies on Heggy because the court of appeals noted that the trial court in the

earlier action made findings of fact before entering judgment. This is true, but it provides Ahern little support because the court of appeals did not suggest that the earlier court's findings had any effect on the decision to apply issue preclusion. Rather, the court of appeals focused on the fact that the party had intentionally avoided participating in the case. Heggy, 156 Wis. 2d at 193-94, 456 N.W.2d at 848-49.

Ahern also cites In re Sweeney, 276 B.R. 186 (B.A.P. 6th Cir. 2002), in which the court concluded that findings of fact are required for a default judgment to have preclusive effect. However, Sweeney involved an interpretation of Ohio law, which the court construed as requiring that an issue be "actually litigated" for issue preclusion to apply. Id. at 194. The court concluded that a party could meet the "actually litigated" requirement if the court in the earlier action made findings of fact. Id. Sweeney is not instructive in this case because, in Heggy, the Wisconsin Court of Appeals recognized an *exception* to the "actually litigated" requirement. In other words, the court gave preclusive effect to the default judgment, not because the court concluded that the judgment satisfied the "actually litigated" requirement, but because the court found that there were good reasons for applying issue preclusion even though the issue had not been actually litigated. Heggy, 156 Wis. 2d at 193-94, 456 N.W.2d at 848-49.

In support of his argument that issue preclusion does not apply unless Kelley and Hill complied with Fed. R. Civ. P. 9 in their state court complaint, Ahern cites the principle under claim preclusion that a judgment is preclusive only to claims that are "well pleaded" in the complaint. E.g., Menard, Inc. v. Liteway Lighting Products, 2005 WI 98, ¶ 34, 282

Wis. 2d 582, 601, 698 N.W.2d 738, 747. Even if I assume that the same rule applies to issue preclusion, Ahern does not cite any authority for the view that preclusion does not apply unless the plaintiff in the earlier case complied with Rule 9 or any other procedural rule. Rather, the Wisconsin Supreme Court has stated that a claim is "well pleaded" for the purpose of claim preclusion if it is "pled with sufficient clarity to give notice to the opposing party and the court of what claims are at stake so that they will understand the claims that will be barred in future litigation." Id. at ¶ 68. In this case, there is no dispute that Kelley and Hill gave Ahern notice in their complaint that they were asserting a claim under § 943.20(1)(d). Even if Rule 9 did apply, I would conclude that Ahern forfeited that issue by litigating the state court action all the way to trial without seeking dismissal under Rule 9, HMBI, Inc. v. Schwartz, No. 1:06CV24TS, 2009 WL 2905535, at *4 (N.D. Ind. Sept. 8, 2009), and by failing to develop an argument in this court regarding how the complaint was deficient, Williams v. Dieball, 724 F.3d 957, 961-63 (7th Cir. 2013).

In their opposition brief, Kelley and Hill argue that Ahern waived the issues raised in his appellate brief because they are inconsistent with his "Statement of Issues on Appeal." Because I am affirming the bankruptcy court's decision on other grounds, I need not consider that issue.

ORDER

IT IS ORDERED that the decision of the bankruptcy court that defendant-appellant Roy Ahern cannot discharge the judgment of the Circuit Court for Door County, Wisconsin

against him for fraudulently obtaining property in violation of Wis. Stat. § 943.20(1)(d) is

AFFIRMED.

    Entered this 23d day of November, 2015.

                                      BY THE COURT:
                                      /s/
                                      BARBARA B. CRABB
                                      District Judge